1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
2 | Including Professional Corporations
EDWARD D. VOGEL, Cal. Bar No. 110081
3 | evogel@sheppardmullin.com
MARK G. RACKERS, Cal. Bar No. 254242
4 | mrackers@sheppardmullin.com
501 West Broadway, 19th Floor
5 | San Diego, California 92101-3598
Telephone:   619-338-6500
6 | Facsimile:   619-234-3815

7 | Attorneys for Defendant
WELLS FARGO BANK, N.A.

8

FILED

JUL - 8 2010

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            DEPUTY

9 | UNITED STATES DISTRICT COURT

10 | SOUTHERN DISTRICT OF CALIFORNIA

11

12 | MICHAEL R. MESKO, an individual,
ANNA R. MESKO, an individual,

13 | Plaintiffs,

14

15 | v.

16 | WELLS FARGO BANK, N.A., a financial
institution; and DOES 1 through 50,
inclusive,

17

18 | Defendants.

Case No. '10 CV 1 42 6 BEN    CAB

**WELLS FARGO BANK'S NOTICE OF
REMOVAL TO FEDERAL COURT**

[Complaint Filed:  May 24, 2010]

19

20

21

22

23

24

25

26

27

28

ORIGINAL

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") provides notice that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Wells Fargo hereby removes to this Court the state court action styled as *Michael R. Mesko, et al. v. Wells Fargo Bank, N.A.*, San Diego County Superior Court Case Number 37-2010-00068037-CU-BC-EC.

The following is a listing of the pleadings to date and a short and plain statement of the grounds for removal:

**I.**

**THE STATE COMPLAINT**

1.      On May 24, 2010, Plaintiffs Michael R. Mesko and Anna R. Mesko ("Plaintiffs") filed a complaint against Wells Fargo and Does 1 through 50, inclusive, in California Superior Court for the County of San Diego, Case Number 37-2010-00068037-CU-BC-EC.  A copy of the state court file is attached hereto as Exhibit "A."

2.      Wells Fargo was served with the summons and complaint on June 10, 2010.  A copy of the complaint and summons is included with the state court file in Exhibit "A."

**II.**

**THIS COURT HAS DIVERSITY JURISDICTION**

3.      Because Plaintiffs are citizens of California and Wells Fargo is a citizen of another state, and because the amount in controversy exceeds $75,000.00, this Court has original diversity jurisdiction over this action under 28 U.S.C. § 1332.

-1-

**Complete Diversity Of Citizenship Exists**

4.     For purposes of determining diversity jurisdiction, Plaintiffs are citizens of California, residing in the County of San Diego. Complaint ¶ 1.

5.     Wells Fargo is not a citizen of California. Wells Fargo is a national association not organized under the laws of any state. National banks are "deemed citizens of the States in which they are respectively located." 28 U.S.C § 1348. For purposes of diversity jurisdiction, a national bank is "located" only in the state where the bank has designated its main office. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306-307 (2006). Wells Fargo has designated its main office as located in South Dakota. *See In re Arbitration Between Wells Fargo Bank, N.A. and WMR e-PIN LLC*, 2008 WL 5429134, *1 (D. Minn. 2008) ("Wells Fargo Bank's articles of association designate Sioux Falls, South Dakota, as the location of Wells Fargo's main office. Thus, Wells Fargo Bank is a citizen of South Dakota.").

6.     For purposes of determining diversity jurisdiction, the citizenship of DOE defendants being sued under fictitious names is disregarded. *See* 28 U.S.C. § 1441(a).

**The Amount In Controversy Exceeds $75,000.00**

7.     This lawsuit arises out of a loan obtained by Plaintiffs, and made by Wells Fargo, on or about September 26, 2006. Complaint ¶¶ 6-7, Exh. A. The loan, in the principal amount of $369,600.00, was secured by a Deed of Trust on real property located at 10077 Medina Drive, Santee, California 92071 (the "Property"). Complaint ¶ 1. After falling behind on their mortgage payments in March 2009, a Notice of Default was recorded and the Property was sold at a trustee's sale on March 8, 2010. Complaint ¶¶ 9-

-2-

11, 18.  A third party purchased the Property for $330,000.00.  Complaint, Exh. C. Plaintiffs allege that Wells Fargo "breached the agreement by misapplying payments made by Plaintiffs under the Agreement, falsely declaring default and termination of the agreement and wrongfully proceeding with the foreclosure."  Complaint ¶ 32.  Based on these allegations, Plaintiffs allege that they suffered damages, including general, emotional distress, punitive and exemplary damages.  Plaintiffs also believe they are entitled to the Property and seek a permanent injunction preventing their eviction from the Property. Complaint ¶ 23, prayer for relief, p. 6:21-28.  Accordingly, the amount in controversy in this action is well in excess of $75,000.00, exclusive of interest and costs.

### III.

### THE NOTICE OF REMOVAL IS PROCEDURALLY CORRECT

8.     The Removal Venue Is Proper.  Pursuant to 28 U.S.C. § 1446(a), Wells Fargo is filing this Notice of Removal in the U.S. District Court for the Southern District of California.  Because the state court action is pending in the California Superior Court for the County of San Diego, East County Division, the U.S. District Court for the Southern District of California is the proper district for removal.  Venue is also proper in the Southern District since the Property at issue in this litigation is located in the County of San Diego, State of California.  *See* Complaint ¶ 1.

9.     The Removal Is Timely.  The Complaint was filed in the California Superior Court on May 24, 2010.  Wells Fargo was served on June 10, 2010.  Pursuant to 28 U.S.C. § 1446(b), Wells Fargo files this Notice of Removal within thirty days of being served with a copy of the complaint.

10.     Wells Fargo Has Sufficient Consent.  Wells Fargo is the only named defendant in this lawsuit.  Wells Fargo is not required to investigate the identity of unnamed defendants or to obtain their consent for removal.  *Newcombe v. Adolf Coors Co.,*

-3-

WELLS FARGO BANK'S NOTICE OF REMOVAL TO FEDERAL COURT

1 | 157 F.3d 686, 690-91 (9th Cir. 1998).  Accordingly, Wells Fargo has sufficient consent to

2 | seek removal of this action to federal court.

3

4 | **IV.**

5 | **CONCLUSION**

6 | For these reasons, Wells Fargo respectfully requests that this Court proceed

7 | with this matter as if the complaint had been originally filed in the U.S. District Court for

8 | the Southern District of California.

9

10 | Dated:  July 8, 2010

11 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13 | By _____

14 | EDWARD D. VOGEL
    | MARK G. RACKERS

15

16 | Attorneys for Defendant
    | WELLS FARGO BANK, N.A.

17

18

19

20

21

22

23

24

25

26

27

28

-4-

W02-WEST:8MGR1\402748510.1

WELLS FARGO BANK'S NOTICE OF
REMOVAL TO FEDERAL COURT

**EXHIBIT A**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS:    250 East Main Street | |
| MAILING ADDRESS:   250 East Main Street | |
| CITY AND ZIP CODE:  El Cajon  CA 92020 | |
| BRANCH NAME:       East County | |
| TELEPHONE NUMBER:  (619) 450-7229 | |
| **PLAINTIFF(S) / PETITIONER(S):**      Michael R  Mesko et al | |
| **DEFENDANT(S) / RESPONDENT(S):** Wells Fargo Bank, N.A | |
| MESKO VS. WELLS FARGO BANK, N.A. | |
| **NOTICE OF CASE ASSIGNMENT** | **CASE NUMBER:** 37-2010-00068037-CU-BC-EC |

Judge:  Randa Trapp                                     Department: E-15

COMPLAINT/PETITION FILED: 05/24/2010

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141 10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

EXHIBIT A - 5

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:  250 East Main Street | |
| MAILING ADDRESS:  250 East Main Street | |
| CITY STATE & ZIP CODE: El Cajon, CA 92020-3941 | |
| BRANCH NAME:  East County | |

| PLAINTIFF(S):  Michael R. Mesko et al |
|---|
| DEFENDANT(S): Wells Fargo Bank, N.A. |
| SHORT TITLE:  MESKO VS. WELLS FARGO BANK, N A |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2010-00068037-CU-BC-EC |
|---|---|

Judge: Randa Trapp                                      Department: E-15

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program              ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                         ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                      ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                        ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral          ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____        Date: _____

Name of Plaintiff                                          Name of Defendant

Signature                                                   Signature

Name of Plaintiff's Attorney                            Name of Defendant's Attorney

Signature                                                   Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3 1385  Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed

**IT IS SO ORDERED.**

Dated:  05/24/2010                                    _____
                                                                 JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)          STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION                    Page 1

3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2010-00068037-CU-BC-EC      CASE TITLE: Masko vs. Wells Fargo Bank, N.A.

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

1) CIVIL MEDIATION PROGRAM: The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

Assignment to Mediation, Cost and Timelines: Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. Discovery: Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred Attendance at Mediation: Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) JUDICIAL ARBITRATION: Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

Assignment to Arbitration, Cost and Timelines: Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing. If a case is valued at under $50,000 and is "at issue" The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter 3 and Code of Civil Procedure 1141 et seq. address this program specifically.

SDSC CIV-730 (Rev 12-05)

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 593-4530.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

SDSC CIV-730 (Rev 12-05)

EXHIBIT A - 8

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Wells Fargo Bank, N.A., a financial institution; and DOES 1 through 50, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MICHAEL R. MESKO, an individual; ANNA R. MESKO, an individual

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

E*ST COU:.TY DIVISION

2010 MAY 24   AM 0: 40

*.. .*  '.'ERIOR COUR:
SAN DIEGO COUNTY, CA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of  San Diego<br>250 E. Main Street, El Cajon, CA. 92020<br>East County Judicial District | CASE NUMBER<br>*(Número del Caso):*<br>2010-00068037-CU-BC-EC |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J.J. Gonzalez, Esq., SBN 243647            (714) 277-3787
THE GONZALEZ LAW GROUP, PLC, 201 W. First St., Suite 213, Santa Ana, CA 92701

DATE:  MAY 2 4 2010                    Clerk, by  P. PALOU                   , Deputy
*(Fecha)*                              *(Secretaria)*                        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* WELLS FARGO BANK, N.A., a financial institution, et. al.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

LexisNexis® Automated California Judicial Council Forms

EXHIBIT A - 9

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| The Gonzalez Law Group, PLC  J.J. Gonzalez, Esq., SBN 243647<br>210 W. First Street, Suite 213<br>Santa Ana, CA 92701<br>TELEPHONE NO: 714-277-3787   FAX NO: 714-479-0737<br>ATTORNEY FOR (Name): MICHAEL R. MESKO and ANNA R. MESKO | FILED<br>EAST [illegible] DIVISION<br><br>2010 MAY 24  AM 8: 40<br><br>[illegible] COURT [illegible]<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 250 E. Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: El Cajon, CA 92020
BRANCH NAME: EAST COUNTY JUDICIAL DISTRICT

CASE NAME:
MICHAEL R. MESKO et. al. v. WELLS FARGO BANK, N.A.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2010-00068037-CU-BC-EC<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | Real Property | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | Enforcement of Judgment |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | Miscellaneous Civil Petition |
| [ ] Professional negligence (25) | Judicial Review | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| Employment | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

**2.** This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. [ ] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

**4.** Number of causes of action (specify):

**5.** This case [ ] is  [X] is not  a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:

J.J. GONZALEZ
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

EXHIBIT A - 10

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice—
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer*
        *or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-*
      *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
      *harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

EXHIBIT A - 11

1 | **THE GONZALEZ LAW GROUP, PLC**
J.J. Gonzalez, Esq., SBN 243647
2 | 210 W. First St., Suite 213
Santa Ana, California 92701
3 | (714) 277-3787 office
(714) 479-0737 fax
4 |
Attorney for Plaintiffs,
5 | MICHAEL R. MESKO and ANNA R. MESKO

```
  FILED
2010 MAY 24  AM 8: 40

  SAN DIEGO COUNTY, CA
```

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| MICHAEL R. MESKO, an individual,<br>ANNA R. MESKO, an individual, | Case No.  37-2010-00068037-CU-BC-EC |
| Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br>a financial institution;<br>and DOES 1 through 50, inclusive,<br><br>Defendants. | **COMPLAINT FOR DAMAGES FOR:**<br><br>1.  DECLARATORY RELIEF<br><br>2.  PRELIMINARY AND PERMANENT<br>    INUNCTIVE RELIEF<br><br>3.  ACCOUNTING<br><br>4.  BREACH OF CONTRACT<br><br>5.  UNFAIR BUSINESS PRACTICES<br><br>6.  INTENTIONAL INFLICTION OF<br>    EMOTIONAL DISTRESS<br><br>**[Unlimited Jurisdiction]** |

Plaintiffs, MICHAEL R. MESKO and ANNA R. MESKO allege as follows:

## GENERAL ALLEGATIONS

1.     Plaintiffs are, and at all times mentioned, were individuals residing in the City of Santee, County of San Diego, State of California and the lawful owner of Real Property commonly known as 10077 Medina Drive, Santee, California 92071 and more particularly described as:

"Lot 30 of Carlton Country Club Manor Unit No. 6, in the City of Santee, County of San Diego, State of California, according to Map thereof No.

**COMPLAINT FOR DAMAGES**
-1-

7368, filed in the office of the County Recorder of San Diego County, July 19, 1972."

2.      Plaintiffs are informed and believe that Defendant WELLS FARGO BANK, N.A. (hereinafter "WELLS FARGO") at all times relevant to this Complaint, was the beneficiary under the deed of trust.

3.      Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein, as DOES 1 through 50 inclusive, and therefore sue said Defendants by such fictitious names and all persons unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on Plaintiff's title thereto.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

4.      Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants sued herein were the agent and/or employee of each of the remaining Defendants and in doing the things hereinafter alleged, were acting in furtherance of such agency and/or employment.

5.      Venue is proper in this judicial district because the property that is the subject of this complaint is located in this judicial district.

6.      In September of 2006, Plaintiffs purchased the subject property, located at 10077 Medina Drive, Santee, California 92071.

7.      To secure payment of the principal sum and interest as provided in the note and as part of the same transaction, Plaintiffs, as trustors, executed and delivered to WELLS FARGO, as beneficiary, a deed of trust.

8.      The aforesaid loan was in the amount of $369,600.00 with an initial fixed interest rate of 6%.  A true and correct copy of the Deed of Trust is attached hereto as Exhibit "A" and is incorporated herein by this reference.

9.      In March of 2009 Plaintiffs fell behind in their monthly payments due to both Plaintiffs losing their jobs.  Starting in March of 2009, Plaintiffs made numerous attempts to modify their loan so they could keep their home.

10.     On or about June 10, 2009, Defendants recorded a Notice of Default against the subject property.  A true and correct copy of the Notice of Default is attached hereto as Exhibit "B" and is incorporated herein by this reference.

COMPLAINT FOR DAMAGES
-2-

11.     On or about September 17, 2009, Defendants recorded a Notice of Sale against the subject property with a sale date of October 7, 2009.  A true and correct copy of the Notice of Sale is attached hereto as Exhibit "C " and is incorporated herein by this reference.

12.     On November 13, 2009, Plaintiffs were informed that they were approved for a "Special Forbearance Agreement" ("Agreement").  Under the Agreement, dated November 13, 2009, Plaintiffs were required to pay $2,133.25 on January 1, 2010; $2,133.25 on February 1, 2010; and $2,133.25 on March 1, 2010.

13.     Plaintiffs sent their first payment of $2,133.25 via check number 1010 on or about December 31, 2009.  A true and correct copy of the bank statement from the checking account is attached hereto as Exhibit "D" and is incorporated herein by this reference.

14.     On February 1, 2010, Plaintiffs were informed by Defendant that they could make their payments under the Agreement via WELLS FARGOS' autopay system.  Plaintiffs called Defendants and made the second required payment under the Agreement of $2,133.25 via the autopay system.   Plaintiffs even repeated the bank account number for the withdrawal to the agent of Defendants three separate times to make sure the account number was correct.  A true and correct copy of Plaintiffs' bank statement showing the funds were available in the account at the time WELLS FARGO attempted to apply the payment is attached hereto as Exhibit "E" and is incorporated herein by this reference.

15.     On or about February 10, 2010, Plaintiffs' entered into a settlement agreement to pay off the second loan on the subject property which was also by Defendant WELLS FARGO.  A true and correct copy of the settlement agreement is attached hereto as Exhibit "F" and is incorporated herein by this reference.

16.     On February 11, 2010, Plaintiffs received a letter from WELLS FARGO stating the Agreement was broken for failure to pay the total amount due.

17.     Thereafter, Plaintiffs called WELLS FARGO who informed them the payment was not applied because the account number given was incorrect.

**COMPLAINT FOR DAMAGES**
-3-

Although the account number was the same account used for the first payment made by Plaintiffs, Defendants failed to apply the correct account number for the second payment.

18.    On March 8, 2010, after Plaintiffs attempted to make two payments of $2,133.25 and paid off the second, the subject property was sold at a foreclosure sale.

19.    From June of 2009 through January of 2010, I continuously made attempts to find someone with either entity who could explain the foreclosure and attempt to rectify the situation.

## FIRST CAUSE OF ACTION
### (Declaratory Relief Against All Defendants)

20.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 to 19 of the complaint, as though fully set forth.

21.    A breach of the obligation for which the deed of trust is security has not occurred, defendants have either refused Plaintiff's tender of arrearages or failed to apply them properly.

22.    An actual controversy exists between Plaintiffs and Defendants concerning their respective rights and duties pertaining to the subject property and the described transactions in that Plaintiffs contend Defendants misapplied moneys paid by Plaintiffs for the Forbearance and that Defendants failed to follow the terms, conditions and obligations under the agreement.

23.    Plaintiffs desire a judicial determination and declaration of Plaintiffs' and Defendant's respective rights and duties.  Specifically, Plaintiffs request a declaration that Plaintiffs did not breach her duties or obligations under the agreement.  Such a declaration is appropriate at this time so that Plaintiff may determine her rights and duties before the Plaintiffs are evicted from the subject property.

## SECOND CAUSE OF ACTION
### (Injunctive Relief Against All Defendants)

24.    Plaintiffs reallege and incorporate by reference each of the foregoing allegations as if fully alleged and set forth herein.

**COMPLAINT FOR DAMAGES**
-4-

25.    Defendants and each of them, beneficiary and trustee, sold the subject property at a foreclosure sale held in violation of the terms of the Forbearance Agreement and unless restrained will evict Plaintiffs from their home, all to Plaintiffs' great and irreparable injury, for which pecuniary compensation would not afford adequate relief.

26.    The eviction is wrongful and should be enjoined by virtue of the facts alleged herein.  Plaintiffs have no other plain, speedy, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs' interests.

### THIRD CAUSE OF ACTION
### (Accounting Against All Defendants)

27.    Plaintiffs reallege and incorporate by reference each of the foregoing allegations as if fully alleged and set forth herein.

28.    The precise amount of money owed between the parties is unknown to Plaintiffs and cannot be determined without an accounting.

### FOURTH CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

29.    Plaintiffs re-allege and incorporate by reference each of the foregoing allegations as if fully alleged and set forth herein.

30.    Plaintiffs and Defendants entered into the agreement as herein alleged.

31.    Plaintiffs have performed all conditions, covenants, and promises required of her to be performed in accordance with the terms and conditions of the agreement up until the property was sold on March 8, 2010.

32.    Defendants have breached the agreement by misapplying payments made by Plaintiffs under the Agreement, falsely declaring default and termination of the agreement and wrongfully proceeding with the foreclosure.

33.    As a direct and proximate result of Defendants' breach as herein alleged, Plaintiffs have been damaged in an undetermined amount which will be established according to proof.

34.    In reliance of the promise and agreements of defendants set forth herein as a result of defendants' breach of the agreement, Plaintiffs have additional

COMPLAINT FOR DAMAGES
-5-

items of damage in an undetermined amount, which will be established according to proof.

## FIFTH CAUSE OF ACTION

### (Unfair Business Practices Against All Defendants)

35.    Plaintiffs re-allege and incorporate by reference each of the foregoing allegations as if fully alleged and set forth herein.

36.    The wrongful acts as herein alleged constitute unfair business practices under the Business and Professions Code, thereby subjecting defendants to any and all available remedies and damages under California law.

## SIXTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress Against All Defendants)

37.    Plaintiffs re-allege and incorporate by reference each of the foregoing allegations as if fully alleged and set forth herein.

38.    The aforementioned acts, and each of them referenced above, in the aggregate, were extreme and outrageous and transcend all bounds of decency and appropriate business conduct.

39.    As a proximate result of the acts of defendants, Plaintiffs continues to suffer from mental anguish, emotional and physical distress, insomnia and depression.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs, and against Defendants, jointly and severally, as follows:

1.    For damages in an amount not less than $25,000.00;

2.    For prejudgment interest according to proof at trial;

3.    For punitive and exemplary damages;

4.    For a declaration of the rights and duties of the parties pursuant to the applicable causes of action;

5.    For all reasonable attorneys fees and costs according to proof at trial;

6.    For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, and all persons acting under, for, or in concert with that defendant, from evicting Plaintiff from the subject property;

COMPLAINT FOR DAMAGES
-6-

7.    For an accounting;

8.    For all reasonable attorneys fees and costs according to proof at trial;

9.    For such further relief as may be permitted by law and as the Court may consider just and proper.

THE GONZALEZ LAW GROUP, PLC

DATED: May 13, 2010

J.J. Gonzalez, Esq.
Attorney for Plaintiffs,
MICHAEL R. MESKO and ANNA R. MESKO

**COMPLAINT FOR DAMAGES**
-7-

## VERIFICATION

I, MICHAEL R. MESKO, for myself, acknowledge that I am the Plaintiff in the above-entitled action. I have read the above Complaint for Damages, and know the contents thereof. The same is true of my own knowledge, except as to those matters that are stated on information and belief, concerning those matters, I believe them to be true. The same has been explained to me in the Spanish language by way of a Spanish language interpreter.

I declare under the penalty of perjury under the laws of the State of California, that the foregoing is true and correct as executed this 14 day of May, 2010, in the City of San Diego_____, State of California.

MICHAEL R. MESKO

**COMPLAINT FOR DAMAGES**

-8-

## VERIFICATION

I, ANNA R. MESKO, for myself, acknowledge that I am the Plaintiff in the above-entitled action. I have read the above Complaint for Damages, and know the contents thereof. The same is true of my own knowledge, except as to those matters that are stated on information and belief, concerning those matters, I believe them to be true. The same has been explained to me in the Spanish language by way of a Spanish language interpreter.

I declare under the penalty of perjury under the laws of the State of California, that the foregoing is true and correct as executed this 14 day of May, 2010, in the City of San Diego, State of California.

ANNA R. MESKO

COMPLAINT FOR DAMAGES

-9-

# Exhibit A

RECORDING REQUESTED BY:
SOUTHLAND TITLE OF SAN DIEGO          **8689**

Recording Requested By:

WELLS FARGO BANK, N.A.
5540 FERMI COURT
CARLSBAD, CA  92008-7346

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN  55121-1663
Prepared By:
JODEEN L. PETERSON
WELLS FARGO BANK, N.A.
5540 FERMI COURT
CARLSBAD, CA  92008-7346

**DOC #   2006-0687615**

SEP 27, 2006    12:08 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J SMITH, COUNTY RECORDER
FEES:         63.00
PAGES:          19          DA:        1

**2006-0687615**

3685 8195          ————[Space Above This Line For Recording Data]————

# DEED OF TRUST          0165808607

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used
in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 28, 2006
together with all Riders to this document.
(B) "Borrower" is
MICHAEL R. MESKO AND ANNA R. MESKO, HUSBAND AND WIFE AS
JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  WELLS FARGO BANK, N.A.

Lender is a  National Association
organized and existing under the laws of  THE UNITED STATES OF AMERICA

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          FORM 3005    1/01

Page 1 of 18          Initials  _____          SCA01   Rev 11/03/00

8890

Lender's address is
P. O. BOX 5137, DES MOINES, IA 50306-5137
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  FIDELITY NATIONAL TITLE INSURANCE COMPANY

(E) "Note " means the promissory note signed by Borrower and dated SEPTEMBER 28, 2006
The Note states that Borrower owes Lender THREE HUNDRED SIXTY-NINE THOUSAND
SIX HUNDRED AND NO/100---------------------------------------------Dollars----------------
(U.S. $ ......369,600.00 ...... ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   OCTOBER 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower (check box as applicable):

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SCA22   Rev  12/18/00                    Page 2 of 18        Initial                    FORM 3005   1/01

EXHIBIT A - 23

8691

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                          of          SAN DIEGO
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

"SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

THIS IS A PURCHASE MONEY MORTGAGE.

Parcel ID Number: 380 · 700 - 39                    which currently has the address of
10077 MEDINA DRIVE                                                          [Street]
SANTEE                               [City] , California     92071     [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03     Rev 11/22/08               Page 3 of 10          Initials             FORM 3005     1/01

8692

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

SCA04   Rev 11/03/03          Page 4 of 18          Initials _____ ARM          FORM 3005   1/01

8693

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

SCA03   Rev 11/02/00          Page 5 of 16          Initials  _____ APM          FORM 3005   1/01

8694

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA; and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

8695

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

SCA07   Rev 11/06/00                 Page 7 of 18          Initials            FORM 3005   1/01

8696

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

SCADA   Rev 03/22/00          Page 8 of 13        Initials: _____ _____   FORM 3005   1/01

EXHIBIT A - 29

8697

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA69   Rev 11/13/03                    Page 8 of 10          Initials:              FORM 3005   1/01

8698

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

SCA10   Rev 09/22/00          Page 10 of 16          Initials          FORM 3005   1/01

8699

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

SCA11   Rev 11/08/00          Page 11 of 18          Initials: _____ APM          FORM 3005   1/01

8700

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

SCA12   Rev 11/03/00            Page 12 of 18        Initials _____        FORM 3005   1/01

8701

requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SCA13   Rev 11/03/00            Page 13 of 18          Initials: _____ _____   FORM 3005   1/01

EXHIBIT A - 34

8702

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph

SCA14   Rev 12/27/09                Page 14 of 18           Initials _____   FORM 3005   1/01

8703

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or

SCA1S   Rev 10/13/03          Page 15 of 16          Initials /          FORM 3005   1/01

8704

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SCA16   Rev 05/22/03          Page 16 of 18          Initials ____   FORM 3005   1/01

EXHIBIT A - 37

8705

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                 MICHAEL R. MESKO              Borrower

_____          _____ (Seal)
                                 ANNA R. MESKO                 Borrower

SCA17   Rev 12/27/00          Page 17 of 18          Initials: _____          FORM 3003   1/01

EXHIBIT A - 38

8706

State of California,                                                ss:

County of San Diego

On September 26, 2006 before me, Gina Sander, notary public

personally appeared

MICHAEL R. MESKO AND ANNA R. MESKO, HUSBAND AND WIFE AS
JOINT TENANTS

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

GINA SANDER
COMM: 01435260
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires AUGUST 23, 2007

_____(Seal)

SCA18   Rev 10/17/03                 Page 18 of 18        Initial:_____        FORM 3005   1/01

8707 19

ORDER NO. 36358195

EXHIBIT "A"

Lot 330 of Carlton Country Club Manor Unit No. 6, in the City of Santee, County of San Diego, State of California, according to Map thereof No. 7368, filed in the office of the County Recorder of San Diego County, July 19, 1972.

Assessors Parcel No : 380-700-39

3

# Exhibit B

Recording Requested By:
FIRST AMERICAN TITLE INSURANCE COMPANY

910

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE SERV
P.O. BOX 961253
FORT WORTH, TX 76161

DOC # 2009-0313420

JUN 10, 2009   8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:        18.00
                         DA:      1
PAGES:        3

TS No.:        2009907081249B
VA/FHA/PMI No.:
TSG No.:        4162218                                           Space above this line for Recorder's use only

Pursuant to California Code Section 2924c(b)(1) please be advised of the following:

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property   No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $11,338.74 as of 6/8/2009, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by you creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO HOME MORTGAGE**
**c/o FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
**P.O. BOX 961253**
**FORT WORTH, TX 76161**
**877-276-1894**

TS No.:     2009907081249B
VA/FHA/PMI No :

**911**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That FIRST AMERICAN LOANSTAR TRUSTEE SERVICES As Agent for the current beneficiary under a Deed of Trust dated 9/26/2006, executed by:

>   MICHAEL R. MESKO,
>   ANNA R. MESKO,

as Trustor to secure certain obligations in favor of WELLS FARGO BANK, N.A. as Beneficiary, recorded 9/27/2006, (as Instrument No.) 2006-0687615, (in Book) , (Page)  of Official Records in the Office of the Recorder of SAN DIEGO County, CALIFORNIA describing land therein as:

AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST

said obligations including ONE NOTE FOR THE ORIGINAL sum of $369,600.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 3/1/2009 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES ASSESSMENTS, FEES, AND/OR TRUSTEE FEES.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby

Dated: June 08, 2009

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
AS AGENT FOR THE CURRENT BENEFICIARY
By: FIRST AMERICAN TITLE INSURANCE COMPANY
as Attorney-In-Fact

By: _____
                              (signature)

Name: _____ KARINA ROBERSON _____

Title: _____

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

See Attached Declaration

## NOTICE OF DEFAULT DECLARATION      912
PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower:  MICHAEL R MESKO
Property Address:  10077 MEDINA DRIVE
                   SANTEE        CA   92071

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met.  This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007.  Non-owner occupied property and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

* The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

* Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary

* The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

* The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

* The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  06/05/2009

_____
Wells Fargo Home Mortgage
John Kennerty

# Exhibit C

B

Requested and Prepared by:
**FIRST AMERICAN TITLE INSURANCE
COMPANY**

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P.O. BOX 961253
FORT WORTH, TX 76161                877-276-1894

TSG No:          4162218
TS No:          200990708013498
FHA/VA/PMI No:            **5664**

DOC #   2009-0518839

SEP 17, 2009    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:        15.00
                       OA:       1
**PAGES:      2**

Space above this line for Recorder's use only

### NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/26/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 10/7/2009 at 10:00 AM, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, as duly appointed Trustee under and pursuant to Deed of Trust recorded 9/27/2006, as Instrument No. 2006-0687615, in book , page , of Official Records in the office of the County Recorder of SAN DIEGO County, State of CALIFORNIA. Executed by:

MICHAEL R. MESKO,
ANNA R. MESKO,

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY STATUE, 250 E. MAIN STREET, EL CAJON, CA.

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 380-700-39-00

The street address and other common designation, if any, of the real property described above is purported to be:

10077 MEDINA DRIVE, SANTEE, CA 92071

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $381,122.32. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

FIRST AMERICAN TITLE INSURANCE COMPANY          Date:   09/11/2009
First American LoanStar Trustee Services
3 First American Way
Santa Ana, CA 92707

JOE BUENO          — FOR TRUSTEE'S SALE
INFORMATION PLEASE CALL 714-573-1965

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

5665

## CALIFORNIA DECLARATION

I, Marsha Graham of Wells Fargo Home Mortgage, Inc., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct.

The Mortgage Loan Servicer has obtained from the Commissioner of Corporations a final or temporary order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

And

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply.

Dated: 6-17-09

By: Marsha Graham

Title: Assistant Vice President

Name: Marsha Graham

RECORDING REQUESTED
FIRST AMERICAN TITLE

Recording Requested By
First American LoanStar Trustee Services LLC
P.O. BOX 961253
FORT WORTH TX
76161-0253

Return Document and

Mail Tax Statements To :
Wells Fargo Home Mortgage
3476 Stateview Blvd
Fort Mill SC
29715

8082

DOC # 2010-0129052



MAR 16, 2010     8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:        21.00
        OC          NA

PAGES:     5

---

Space above this line for Recorder's use only

APN Number :          380-700-39-00
Title Order Number :   4162218
1S Number :           20099070812498
Loan Type :           Conventional

## TRUSTEES DEED UPON SALE

The undersigned grantor declares under penalty of perjury
1) The grantee herein WAS the foreclosing Beneficiary
2) The amount of the unpaid debt together with costs was.......... $ 374,909 13
3) The amount paid by the Grantee at the trustee sale was.. . .... $ 330,000.00
4) The documentary transfer tax is . ...... .... ...... ..... .......... $ 0 - Exempt

5) Said property is INCORPORATED / ~~UNINCORPORATED~~ Santee

First American LoanStar Trustee Services LLC       , (herein called Trustee), as the duly appointed Trustee under the
Deed of Trust hereinafter described, does hereby grant and convey, but without warranty, expressed or implied to :

Bank of America, National Association

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of San
Diego in the State of California, described as follows :

See Exhibit A attached hereto and made a part hereof.

Recitals :
This conveyance is made pursuant to the powers conferred upon the Trustee by that certain Deed of Trust dated
09/26/2006 and executed by ,

MICHAEL R. MESKO and ANNA R. MESKO

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Page 2 of 4

| | |
|---|---|
| APN Number : | 380-700-39-00 |
| Title Order Number : | 4162218 |
| TS Number : | 20099070812498 |
| Loan Type : | Conventional |

**8083**

As Trustor, and recorded 09/27/2006 , as Instrument Number 2006-0687615 , in Book , Page , of Official Records of the County of San Diego in the State of California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the County Recorder of said County

All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil Code 2924, et. seq., regarding the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met.

Said property was sold by said Trustee at public auction on 03/08/2010 at the place named in the Notice of Sale, in the County of San Diego in the State of California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said Trustee the amount of 330000.0000 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligation then secured by said Deed of Trust

EXHIBIT A - 50

8084

Date : _____ MAR 0 9 2010 _____

First American Loanstar Trustee Services

By _____

    DeeAnn Gregory, Trustee Officer

State of Texas
County of Tarrant

Before me Therese Pfullmann , on this day personally appeared DeeAnn Gregory, known to me to be the person whose name is subscribed to therefore going instrument and acknowledged to me that this person executed the same for the purposes and considerations therein expressed.

MAR 0 9 2010

Given under my hand and seal of office this day of _____

Witness my hand and official seal

Signature : _____

THERESE PFULLMANN
Notary Public, State of Texas
My Commission Expires
January 08, 2012

EXHIBIT A - 51

APN Number :           380-700-39-00
Title Order Number :   4162218
TS Number :            20099070812498
Loan Type :            Conventional

8085

## Exhibit  A

### Legal Description

LOT 330 OF CARLTON COUNTRY CLUB MANOR UNIT NO  6, IN THE CITY OF SANTEE,
COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 7368,
FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 19, 1972

EXHIBIT A - 52

**EXHIBIT B**

**Foreclosing Lender Contact Information**

8086

Lender Name :        Wells Fargo Bank, NA

Address :              3476 Stateview Blvd, Fort Mill SC  29715

Telephone :           866-894-9432

Email Address :       trina.glover@wellsfargo.com

Authorized Representative Name :    Trina Glover

# Exhibit D

**CHASE** 

December 08, 2009 through January 08, 2010
Primary Account: ⬛⬛⬛⬛⬛⬛⬛6183

CHASE FREE EXTRA CHECKING

MICHAEL R MESKO                                    Account Number: ⬛⬛⬛⬛⬛⬛⬛6183
OR ANNA R MESKO

## CHECKING SUMMARY

|  | AMOUNT |
|---|---|
| Beginning Balance | $4,489.99 |
| Deposits and Additions | 6,139.38 |
| Checks Paid | - 3,384.07 |
| ATM & Debit Card Withdrawals | - 3,599.15 |
| Other Withdrawals, Fees & Charges | - 1,697.00 |
| Ending Balance | $1,949.13 |

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 1010 ^ | 12/31 | $2,133.25 |
| 1012 * ^ | 01/08 | 1,250.82 |
| Total Checks Paid | | $3,384.07 |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
|  | Beginning Balance |  | $4,489.99 |
| 12/08 | Non-Chase ATM Withdraw 12/08 7740 Copley Park Place San Diego CA Card 2018 | - 101.75 | 4,388.24 |
| 12/09 | Card Purchase With Pin  12/08 Cvs 09182 LA Mesa CA Card 2018 | - 23.24 | 4,365.00 |
| 12/10 | Card Purchase With Pin  12/09 0221 Henrys Santee CA Card 1010 | - 80.15 | 4,284.85 |
| 12/11 | Boiling Group, Dir Dep          PPD ID: 1134042452 | 2,070.76 | 6,355.61 |
| 12/11 | Transfer To Sav Xxxxx3222 | - 250.00 | 6,105.61 |
| 12/11 | State Farm Ro 08 Sfpp          PPD ID: 9000313001 | - 127.00 | 5,978.61 |
| 12/11 | Card Purchase With Pin  12/10 Shell Service S San Diego CA Card 2018 | - 39.74 | 5,938.87 |
| 12/11 | Card Purchase With Pin  12/10 Cvs 09189 LA Mesa CA Card 1010 | - 12.57 | 5,926.30 |
| 12/14 | Card Purchase          12/11 Ihop #821 Santee CA Card 1010 | - 13.33 | 5,912.97 |
| 12/15 | Card Purchase          12/14 Chargers Football 619-280-2121 CA Card 2018 | - 1,890.00 | 4,022.97 |

Page 3 of 6

CHASE 

December 08, 2009 through January 08, 2010
Primary Account: XXXXXXXXX6183

## TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|
| 12/17 | Card Purchase 2018 | 12/15 Applebees 794315215197 San Diego CA Card | - 35.51 | 3,987.46 |
| 12/18 | Transfer To Sav Xxxxx3222 | | - 250.00 | 3,737.46 |
| 12/18 | Card Purchase With Pin | 12/17 Ross Stores #13 San Diego CA Card 2018 | - 69.55 | 3,667.91 |
| 12/18 | Card Purchase 2018 | 12/17 Union 76   10077774 San Diego CA Card | - 41.86 | 3,626.05 |
| 12/21 | Non-Chase ATM Withdraw 12/18 4080 Convoy Street US San Diego CA Card 2018 | | - 202.75 | 3,423.30 |
| 12/21 | Card Purchase 2018 | 12/17 Shogun Restaurant - Sa San Diego CA Card | - 79.70 | 3,343.60 |
| 12/21 | Card Purchase | 12/18 Players Sports Bar San Diego CA Card 2018 | - 49.43 | 3,294.17 |
| 12/21 | Card Purchase | 12/17 Paradise Nails & Spa LA Mesa CA Card 1010 | - 36.00 | 3,258.17 |
| 12/21 | Card Purchase With Pin 12/18 Toys R US Le Mesa CA Card 1010 | | - 32.83 | 3,223.34 |
| 12/21 | Card Purchase | 12/17 Lunch Box Cafe & Deli LA Mesa CA Card 1010 | - 15.55 | 3,207.79 |
| 12/21 | Card Purchase 2018 | 12/19 Union 76   10077774 San Diego CA Card | - 2.01 | 3,205.78 |
| 12/23 | Card Purchase W/Cash   12/22 Vons 2040 San Diego CA Card 2018 Purchase $200.00 Cash Back $60.00 | | - 260.00 | 2,945.78 |
| 12/24 | Bottling Group, Dir Dep   PPD ID: 1134042452 | | 2,040.68 | 4,986.46 |
| 12/24 | Card Purchase With Pin 12/23 Target T0304 El El Cajon CA Card 1010 | | - 163.73 | 4,822.73 |
| 12/28 | Transfer To Sav Xxxxx3222 | | - 250.00 | 4,572.73 |
| 12/28 | Card Purchase 2018 | 12/23 Union 76   10077774 San Diego CA Card | - 42.33 | 4,530.40 |
| 12/31 | Check   # 1010 | | - 2,133.26 | 2,397.15 |
| 12/31 | Card Purchase With Pin 12/30 Shell Service S San Diego CA Card 2018 | | - 42.71 | 2,354.44 |
| 12/31 | Card Purchase With Pin 12/30 #06723 Albertso Spring Valle CA Card 1010 | | - 39.15 | 2,315.29 |
| 01/04 | Transfer To Sav Xxxxx3222 | | - 250.00 | 2,065.29 |
| 01/04 | Online Payment 728608360 To Sdge | | - 200.00 | 1,865.29 |
| 01/04 | Card Purchase With Pin 12/31 Vons 1887 Santee CA Card 1010 | | - 162.45 | 1,692.84 |
| 01/04 | Online Payment 728608359 To Cox | | - 100.00 | 1,582.84 |
| 01/04 | Card Purchase 2018 | 01/02 Union 76   10077774 San Diego CA Card | - 32.52 | 1,550.32 |
| 01/04 | Online Payment 728608361 To Sharp Hospital | | - 20.00 | 1,530.32 |
| 01/04 | Card Purchase 1010 | 01/02 Mcdonald's M5263 Olq17 San Diego CA Card | - 12.15 | 1,518.17 |
| 01/06 | Check   # 1012 | | - 1,250.82 | 267.35 |
| 01/06 | Card Purchase With Pin 01/05 Vons 2064 El Cajon CA Card 1010 | | - 174.03 | 93.32 |
| 01/07 | Card Purchase With Pin 01/06 Target T1410 Sa San Diego CA Card 1010 | | - 22.11 | 71.21 |
| 01/08 | Bottling Group, Dir Dep   PPD ID: 1134042452 | | 2,027.92 | 2,099.13 |
| 01/08 | Transfer To Sav Xxxxx3222 | | - 250.00 | 1,849.13 |
| | Ending Balance | | | $1,849.13 |

# Exhibit E

# CHASE 

JPMorgan Chase Bank, N.A.
P O Box 260180
Baton Rouge, LA 70826-0180

January 09, 2010 through February 05, 2010

Primary Account: ############6183

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-788-7000 |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00071523.DRE 703 141 03710 - YYYNNT 1 000000000 05 0000
MICHAEL R MESKO
OR ANNA R MESKO
10077 MEDINA DR
SANTEE CA 92071-2040



**IMPORTANT NOTICE**
We are making changes to your account.
Please see the enclosed notice(s) for more information.

**Important information about your Chase Savings[SM] account**

Starting 4/1/2010, your first four withdrawals per monthly cycle from your Chase Savings [SM] will be at no charge. There will be a $3 Additional Withdrawal Fee for each withdrawal after your first four withdrawals. The Additional Withdrawal Fee is waived if you are under 18 years of age.

Please note your monthly cycle may or may not correspond to a calendar month, but to your statement cycle. All other terms and conditions will remain the same. Please call us 1-800-935-9935 if you have questions.

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Free Extra Checking | ###########6183 | $1,849.13 | $5,857.16 |
| Chase Savings | ##########3222 | 6,700.89 | 4,500.92 |
| **Total** | | **$8,550.02** | **$10,358.08** |

| **TOTAL ASSETS** | | **$8,550.02** | **$10,358.08** |
|---|---|---|---|

All Summary Balances shown are as of February 5, 2010 unless otherwise stated.  For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements. Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

*Page 1 of 5*

Exhibit F



Wells Fargo Services
MAC N9777-113-HEQ
PO BOX 5169
Sioux Falls, SD 57117-5169

March 16, 2010

MICHAEL R MESKO
ANNA R MESKO
10077 MEDINA DR
SANTEE, CA 920712040

Re: Account Number: 83765033530751998

Dear MICHAEL R MESKO & ANNA R MESKO:

This letter confirms that with your remittance of $8,100.00 on 02/12/2010, Wells Fargo considers the above-referenced Account to be settled in full, for less than the full balance. In consideration of this settlement, Wells Fargo will cease further collection efforts and the remaining balance will be charged-off.

Wells Fargo will report the Account to the credit bureau reporting agencies to which it reports as a charged-off account that was paid in full for less than the full balance.

Please be advised that the Internal Revenue Service (IRS) requires financial institutions to annually report to the IRS discharges of indebtedness. In the event a settlement of this account results in a forgiveness of $600 or more of the principle balance due on the account, we may be required to file an informational return with the IRS reporting the forgiven amount. Please contact your tax advisor with any questions about how this may affect your income tax liability.

If you have any questions, please call me at 1-800-944-4601 Monday through Thursday 8 a.m. to 9 p m CT, Friday 8 a.m. to 5 p.m. CT, Saturday 8 a.m. to 12 p.m. CT. If I am unavailable, any representative can assist you.

Sincerely,

EM
Home Equity Collections Servicing

The laws of some states require us to inform you that this communication is an attempt to collect a debt and that information obtained will be used for that purpose.

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michael R. Mesko and Anna R. Mesko | Wells Fargo Bank, N.A. |

**FILED**
10 JUL -8 PM 1:59

| **(b)** County of Residence of First Listed Plaintiff <u>San Diego</u> | County of Residence of First Listed Defendant <u>Des Moines, Iowa</u> |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) U.S. DISTRICT |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE ... CAL... LAND INVOLVED. |

MTB
DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

J.J. Gonzalez, Esq.
The Gonzalez Law Group, PLC
210 W. First Street, Suite 213
Santa Ana, CA 92701
(714) 277-3787 Fax: (714) 479-0737

Attorneys (If Known)
Edward D. Vogel #110081 / Mark G. Rackers #254242
Sheppard, Mullin, Richter & Hampton LLP
501 West Broadway, Suite 1900
San Diego, CA 92101
(619) 338-6500

**10 CV 1426 BEN     CAB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 720 Labor/Mgmt. Relations | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 790 Other Labor Litigation | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☒ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus – Alien Detainee
☐ 465 Other Immigration Actions

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sections 1332, 1441, 1446

Brief description of cause:
Plaintiffs claim Wells Fargo is liable for fraud and breach of contract related to an alleged loan modification.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)   JUDGE _____   DOCKET NUMBER _____

DATE
July 8, 2010   W02-WEST:8MGR1\402748486.1

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 18502   AMOUNT $350   7/8/10 BY   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**ORIGINAL**
American LegalNet, Inc.
www.FormsWorkflow.com

CR

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS015502
Cashier ID: bhartman
Transaction Date: 07/08/2010
Payer Name: AMERICAN MESSENGER SERVICE
--------------------------------
CIVIL FILING FEE
 For: MESKO V WELLS FARGO
 Case/Party: D-CAS-3-10-CV-001426-001
 Amount:        $350.00
--------------------------------
CHECK
 Check/Money Order Num: 6642
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```